UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MS. C., on their her own behalf and as next Friends of A.N.,<br>  *Plaintiff*,<br><br>v.<br><br>MIDDLETOWN BOARD OF EDUCATION,<br>  *Defendant*. | No: 3:20-cv-00512 (KAD)<br><br><br><br><br>September 29, 2021 |

## ORDER DISMISSING CASE

On July 20, 2021, this Court ordered the parties to file supplemental briefs addressing whether this appeal from an administrative decision of the State of Connecticut Department of Education dated March 25, 2020 brought by the Plaintiff (the "Parent") under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*, has been rendered moot. Specifically, the Parent challenges the decision of the State's Impartial Hearing Officer which held that the Middletown Board of Education (the "Board") met its substantive obligation to provide A.N. (the "Student") a free appropriate public education ("FAPE") under the IDEA for the 2019-2020 school year, including extended school year 2019. As noted previously, the individualized education program ("IEP") offered by the Board and approved by the Hearing Officer recommended that A.N. be placed in-district at Spencer Elementary School with Intensive Case Management ("ICM") for the 2019-2020 school year. The Parent seeks reversal of the Hearing Officer's decision and an order directing that A.N. be placed at Intensive Education Academy ("IEA"), a private special education placement in West Hartford, CT. The Court has reviewed the parties' supplemental briefs addressing whether a live controversy remains with respect to the

challenged IEP.  (ECF Nos. 26–28.)  For the reasons that follow, the Court concludes that the appeal is moot and the case is accordingly dismissed for lack of subject matter jurisdiction.

**Legal Standard**

"A party seeking to have a case dismissed as moot bears a heavy burden." *Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ.*, 397 F.3d 77, 84 (2d Cir. 2005).  "A case becomes moot when it no longer satisfies the 'case-or-controversy' requirement of Article III, Section 2 of the Constitution."  *United States v. Williams*, 475 F.3d 468, 478 (2d Cir. 2007).  To satisfy this "requirement, a party must, at all stages of the litigation, have an actual injury which is likely to be redressed by a favorable judicial decision."  *Id*. at 479 (quotation marks and citations omitted). "Generally, 'if an event occurs during the course of the proceedings or on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, [the Court] must dismiss the case.'"  *Id*. (quoting *United States v. Blackburn*, 461 F.3d 259, 261 (2d Cir. 2006)).  "Nonetheless, an exception exists for cases that are 'capable of repetition, yet evading review'—that is, cases where '(1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again.'"  *F.O. v. New York City Dep't of Educ.*, 899 F. Supp. 2d 251, 254 (S.D.N.Y. 2012) (quoting *Van Wie v. Pataki*, 267 F.3d 109, 114 (2d Cir. 2001)).  "[T]his 'exception to mootness principles is severely circumscribed and applies only in exceptional situations.'"  *Id*. (quoting *Knaust v. City of Kingston*, 157 F.3d 86, 88 (2d Cir. 1998)) (brackets and ellipsis omitted).

**Discussion**

A.N. is eligible for special education services pursuant to the IDEA's OHI-ADD/ADHD classification.  (*See* B-15 at 1.)  She suffers from challenges with, *inter alia*, maintaining attention

and regulating her behavior, a low IQ, and reduced proficiency in reading, math, and writing.[1] In this appeal, the Parent challenges the sufficiency of the IEP offered by the Board to the Student for the 2019-2020 school year, during which time A.N. was in fourth grade.[2] The Parent asserts that the Board erred in failing to recommend A.N.'s continued placement at IEA, which A.N. attended beginning in the middle of her second-grade year (2017-2018) following a settlement between the parties regarding A.N.'s academic placement for the 2017-2018 and 2018-2019 school years. Thus, two entire school years have passed since the Board presented the IEP that is the subject of this appeal. And the Parent does not seek tuition reimbursement for A.N.'s prior attendance at IEA; she instead prays for injunctive relief—requesting that the Court order A.N.'s continued placement at IEA. However as the Board has confirmed in its supplemental brief, A.N. is now subject to a new IEP, pursuant to which A.N. has been placed in the ICM program at Keigwin Middle School in Middletown. In light of these developments, the question is whether the Parent's challenge to the 2019-2020 IEP is too short to be litigated fully prior to its expiration and, if so, whether there is a reasonable expectation that the Student will be subject to the same IEP again so as to satisfy the exception to mootness for cases that are capable of repetition yet evade judicial review.

The parties agree that "because the administrative and judicial review of an IEP often takes more than the nine months that any given school year is in session such that the review is not complete until after the IEP has expired," the instant "IEP dispute satisfies the first criteria for

---

[1] The record in this case is expansive, to include eleven days of evidentiary hearings at the administrative level. The Court does not recount the factual or procedural history concerning the Student's disability at the time of the Hearing Officer's decision in light of its conclusion that it is without jurisdiction to reach the merits of the Parent's claims.

[2] The IEP is "[t]he centerpiece of the IDEA's educational delivery system" and serves as "a written statement that sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives." *D.D. ex rel. V.D. v. New York City Bd. of Educ.*, 465 F.3d 503, 507–08 (2d Cir. 2006), *opinion amended on denial of reh'g*, 480 F.3d 138 (2d Cir. 2007) (quotation marks and citations omitted).

avoiding a mootness dismissal." *B.J.S. ex rel. N.S. v. State Educ. Dep't/Univ. of State of N.Y.*, 815 F. Supp. 2d 601, 612 (W.D.N.Y. 2011). However they disagree at the second step of the analysis as to whether there is a reasonable expectation that the Board will subject A.N. to the same action again, such that a live controversy remains as to the appropriateness of the 2019-2020 IEP.

In *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176 (1982), the Supreme Court interpreted the standard under which courts are to assess whether a student has been provided a FAPE under the IDEA's predecessor statute. The dispute in that case centered on the IEP provided a deaf student for a school year that had since passed. But the Supreme Court observed that "[j]udicial review invariably takes more than nine months to complete, not to mention the time consumed during the preceding state administrative hearings," and therefore concluded that the district court "retained jurisdiction to grant relief because the alleged deficiencies in the IEP were capable of repetition as to the parties before it yet evading review." *Id*. at 186 n.9. The Parent argues that just "as in *Rowley*, this Student can be subject to the same IEP," as "[i]t is not only possible but highly likely that the student will continue to be offered an IEP in public school in regular education grade level classes with minimal resource support and related services, which is what was offered in the IEP in question." (Pl.'s Supp. Br. at 3.) The Parent further notes that the challenged IEP does not specify placement at Spencer School in Middletown but, rather, provides for placement within the more generic ICM model, which remains a viable option from elementary through high school.

However the Second Circuit has cautioned that the mere possibility that a student will be subject to the same placement as that proposed in a prior IEP is insufficient to satisfy the exception to mootness, as such possibility "exists in the case of every disabled child who is presently in a mainstream classroom and for whom a new IEP must be prepared annually." *Lillbask*, 397 F.3d at 88. Therefore, "[a] plaintiff must point to something more in the record to lift that possibility

4

beyond the speculative."[3]  *Id*.  In *Lillbask*, the Second Circuit held that the student's challenge to an IEP which offered him placement outside of the Redding, CT public schools was rendered moot by the defendants' acknowledgment that the student was now thriving in the Redding public schools and by their representation that they would no longer seek to remove him from that placement.  *See id*. at 87–88.  The Parent therefore argues that *Lillibask* is distinguishable because the Board here has not signaled any intention to place A.N. at IEA and instead continues to maintain the propriety of a public school placement.

The Parent also distinguishes other cases that similarly found that an intervening circumstance rendered the contested IEP inapplicable or irrelevant.  *See, e.g.*, *Ostby v. Manhattan Sch. Dist. No. 114*, 851 F.3d 677, 682 (7th Cir. 2017) (deeming appeal moot where the student was "no longer subject to the challenged IEP" and the school district disavowed its further intent to transfer him to the program reflected in the IEP to which the parents had objected); *B.J.S. ex rel. N.S.*, 815 F. Supp. 2d at 611–13 (finding challenge to proposed IEP moot where IEP was never implemented and was subsequently superseded by new IEP); *Patskin v. Bd. of Educ. of Webster Cent. Sch. Dist.*, 583 F. Supp. 2d 422, 429 (W.D.N.Y. 2008) (holding that action was moot where the student was no longer eligible for placement at the school recommended in the challenged IEP). In her reply brief the Parent synthesizes these cases as standing for the categorical proposition that "in order to be found moot the student would need to have moved, the parties would have had to come to agreement or the Board would have had to agree to stop the challenged action."  (Reply at 1.)  She contrasts these factual scenarios with that presented in *Student X v. New York City Dep't of Educ.*, No. 07-CV-2316 (NGG) (RER), 2008 WL 4890440 (E.D.N.Y. Oct. 30, 2008), where the

---

[3] While, as noted, the defendant bears the burden of establishing mootness, it is the plaintiff who must "make a reasonable showing that [she] will again be subjected to the alleged illegality" when invoking the exception for cases that are capable of repetition yet evade review.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983).

district court held that a challenge to an IEP that had been superseded by a later IEP continued to present a live controversy. There, the later IEP "was substantively identical to the" earlier IEP, and the defendant had continued to defend both IEPs and had not changed its position that the student did not require at-home services, which the plaintiffs contested. *See id*. at *14. The district court accordingly concluded that the dispute was capable of repetition yet evading review. *Id*. The Parent argues that the same reasoning applies here because the Board continues to defend its refusal to place A.N. at IEA notwithstanding the development of a superseding IEP or IEPs.

It is true that the Board has not assented to the Parent's requested placement at IEA and continues to defend the appropriateness of the public school placement using the ICM model. As the Board points out in its supplemental brief, however, the parties are in different positions today than they were when the Hearing Officer issued her decision on March 25, 2020. While the Parent initially maintained unilateral placement of A.N. at IEA, A.N. returned to Middletown Public Schools in January 2021 and received virtual instruction under the hybrid learning model offered during the 2020-2021 school year.[4] (Farquharson Decl. ¶¶ 4–5, ECF No. 27-1.) Following subsequent evaluation of A.N. and a PPT meeting held in February 2021, A.N. was placed in the ICM program at Spencer School for the remainder of that school year. (*Id*. ¶¶ 6–7.) Another PPT meeting was held in May 2021 and "[b]ased on the Student's experience from January 2021 to May 2021, the PPT again recommended placement in the ICM module at Keigwin Middle School for the 2021-2022 school year." (*Id*. ¶¶ 9–11.) A.N. is currently enrolled in the Middletown Public Schools for the 2021-2022 school year. (*Id*. ¶ 12.)

---

[4] In her reply the Parent asserts that the Board has "insert[ed] supplemental information into its brief including an affidavit with no authority to do so." (Reply at 3.) However the Court specifically permitted the parties to "supplement the record, if appropriate" in its Order directing supplemental briefing. (ECF No. 23 at 5.) And it is well established that a court "may consider materials outside the record for the purpose of determining whether subject matter jurisdiction exists." *Guy v. Moynihan*, No. 3:17-CV-00014 (SRU), 2017 WL 2661620, at *1 (D. Conn. June 20, 2017).

As discussed above, mootness can derive from circumstances which render it impossible for the Court to provide any redress for the claimed injury. *Williams*, 475 F.3d at 479. And, therefore, the Court looks, in part, to the relief sought in making the assessment of whether a claim is moot. *See, e.g.*, *Ramos v. New York City Dep't of Educ.*, 447 F. Supp. 3d 153, 157 (S.D.N.Y. 2020) ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed.") (quoting *Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983)). Here, the Parent seeks only forward-looking placement at IEA for the 2021-2022 school year.  But the information and data contained in the present record, which would inform the Court's analysis as to whether the Board denied A.N. a FAPE for the 2019-2020 school year and whether she should have been placed at IEA during that school year, is completely different from the information that would guide the question of whether to grant this relief today.  That is, were the Court to reverse the decision of the Hearing Officer and hold that the IEP recommending placement at Spencer School for 2019-2020 was deficient, it does not follow that the Court could order placement at IEA for 2021-2022 without consideration of A.N.'s more recent progress and evaluations, which are not part of the record before the Court.  Indeed, the Court is simply without the information needed or the expertise required to determine whether A.N. should be placed in IEA at this juncture of her education. *See J. T. v. D.C.*, 983 F.3d 516, 524–25 (D.C. Cir. 2020) ("[I]f we were to decide now whether the 2017 IEP provided V.T. with a FAPE in 2017, the decision would *not* determine whether an IEP provides V.T. with a FAPE today or in the future," a "conclusion [which] necessarily follows from the IDEA's requirement that every IEP include 'a statement of the child's *present* levels of academic achievement and functional performance' and set out 'measurable *annual* goals, including academic and functional goals.'") (quoting 20 U.S.C. §§ 1414(d)(1)(A)(i)(I)–(III)).  Indeed, the Hearing Officer's decision itself was confined to the narrow issue of "whether IEA is the appropriate program for the student 'and should the Board be

ordered to place the Student at IEA for the 2019-2020 school year'"—*not* whether the Board should be ordered to place A.N. at IEA for any subsequent school years.  (Hearing Officer Decision at 42 n.12, ECF No. 1-2.)

The Court therefore agrees with the Board that it is without authority to issue "an advisory opinion concerning a prior school year for which no relief can be awarded," that "would then bind the parties in future years." (Def.'s Br. at 6.)  As the Seventh Circuit explained in a case involving an IDEA appeal that became moot following the student's transfer to another school district:

> The dispute over the 2002–2003 IEP [when the student was in kindergarten] turned on whether Bobby was ready for full-time mainstream class. Now, as a nine-year old, Bobby's readiness for mainstream education presents a different question calling for reassessment of his educational development. Were we to decide, at this later date, whether mainstreaming was right for Bobby back in 2002–2003, we would be issuing, in effect, an advisory opinion. Our decision would merely tell the parties who was correct about Bobby's outdated IEP. It would do nothing to define the contours of the parties' continuing legal relationship under the IDEA such that future repetitions of the injury could be avoided.

*Brown v. Bartholomew Consol. Sch. Corp.*, 442 F.3d 588, 599–600 (7th Cir. 2006).  Here, too, a favorable decision concluding that the Board violated A.N.'s right to a FAPE in 2019-2020 would do little to inform the decision as to whether IEA is an appropriate placement for A.N. as a sixth grader.[5]  *See also Nathan M. by & through Amanda M. v. Harrison Sch. Dist. No. 2*, 942 F.3d 1034, 1046 (10th Cir. 2019) ("concluding that "[a]lthough Parent and the District may continue to lock horns over Nathan's educational placement, their dispute has not sharpened into a specific legal

---

[5] The Parent argues that *Brown* is distinguishable because the student in that case had moved to another school district, where he was subject to a new IEP.  However the court's mootness determination was predicated not on the relocation but, rather, on the fact that the parents had sought only injunctive relief and the court could not determine whether the student was entitled to that injunctive relief in the context of the student's current grade level and on the basis of an outdated IEP.  The same reasoning applies here.  *Cf. L.D. v. Sumner Cty. Sch.*, 299 F. Supp. 3d 901, 908–09 (M.D. Tenn. 2018) ("The fact that [the student] has unilaterally changed schools does not, by itself, make the case moot, particularly because his parents challenge to SCS's decision was made prior to the move. What makes the case moot is any allegation or evidence from Plaintiffs that, if, and when [the student] returns to an SCS school, he will be the same boy as when he left, as opposed to an autistic child who presents 'an evolving set of challenges for educators.'") (quoting *Brown*, 442 F.3d at 599) (internal citations omitted).

controversy that this court is capable of resolving," where a "ruling on the merits . . . would tell the parties who was right about Nathan's 2016 IEP, but nothing more,"—a conclusion which was "especially true given that, since 2016, Nathan has matriculated from elementary to middle school, and the District now recommends he be placed in a different school . . . which may have different capacities, offer different services, or present unique challenges to Nathan's continuing education and development").

Nor is the Court persuaded by the Parent's circular argument premised on the "stay put" provision of the IDEA that "[if] this Court overturns the decision of the hearing officer, placement at IEA becomes the 'then current educational placement' of the Student, not Middletown public schools, and will remain the 'then current educational placement' throughout any further legal action."  (Reply at 3 (citing 20 U.S.C. § 1415(j)).)  This argument is, in essence, that the case is not moot because if the Parent prevails she will procure the relief she seeks—a result that obtains in any case resulting in a favorable decision for the plaintiff.  That the Parent believes she is entitled to a favorable decision is not questioned, but that does not change the inescapable fact that the Court cannot order the redress she seeks on the basis of an outdated record and an outdated IEP.

**Conclusion**

For the foregoing reasons, this matter is dismissed for lack of subject matter jurisdiction and the Clerk of the Court is directed to close the case.

**SO ORDERED** at Bridgeport, Connecticut, this 29th day of September 2021.

>  */s/ Kari A. Dooley*
>  KARI A. DOOLEY
>  UNITED STATES DISTRICT JUDGE